**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES MURRAY** )<br>    **Plaintiff,** )<br>) | |
| **vs.** ) | **C.A. No. 03-297 Pittsburgh** |
| ) | |
| **WILLIAM STICKMAN, et al.** )<br>    **Defendants.** ) | **Magistrate Judge Baxter** |

## MEMORANDUM ORDER

### I.   INTRODUCTION

On February 28, 2003, Plaintiff James Murray, acting *pro se*, filed the instant action. This matter was assigned to United States District Judge Sean J. McLaughlin and was referred to United States Magistrate Judge Susan Paradise Baxter for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

On February 14, 2006, the parties filed a Consent to the Jurisdiction of this Magistrate Judge. District Judge Sean J. McLaughlin granted the consent, and a jury trial was scheduled for March 14, 2006. Plaintiff did not appear for trial and has not been heard from since he signed the consent form in February.

### II.   *DE NOVO* REVIEW

#### A. The Procedural History

The procedural history of this matter is necessarily related herein.

On February 28, 2003, Plaintiff, acting *pro se*[1], filed this civil rights case while he was

---

[1] *Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support

1

incarcerated at the State Correctional Institution at Greene ("SCI-Greene") located in Waynesburg, Pennsylvania. He has since been released from custody and is living in Philadelphia (Docket # 9).

Plaintiff originally brought suit against seven defendants employed at the State Correctional Institution at Greene ("SCI Greene").[2] In the original complaint, Murray charged that on April 20, 2002, he was asked by a fellow inmate to assist him in preparing claims on his behalf resulting from an assault on the inmate. He claims that after they met in the law library for this purpose, Defendant Enders began calling Plaintiff a "rat" and verbally threatening him. Plaintiff filed a grievance against Enders and requested that Enders "be removed or and (sic) separated from me." (Document #3 at pg. 2 of attached statement). Thereafter, Plaintiff claimed that "Enders and others had made threats to harm me, denied me meals, took my properties or stealing of same, denied me access to needed legal material, and send other inmates to harm me." (Id.) Specifically, Plaintiff alleged: 1) Officer Enders assaulted him on two separate occasions and then wrote up false misconduct reports to cover them up; and 2) Officer Enders ordered another inmate to assault him in the shower with an "instrument" passed to the inmate from Enders or another officer. The other named Defendants were alleged to have violated Plaintiff's rights by not stopping this behavior toward him.

Shortly after the filing of his original complaint, Plaintiff filed an Amended Complaint that purported to add at least 10 more named defendants, as well as John Does. The Amended Complaint was filed pursuant to Rule 15, Fed.R.Civ.P., but Plaintiff never forwarded the required paperwork and copies to the U.S. Marshal Service to facilitate service of the additional defendants. As these new named defendants were never served, they have not been recognized by the Court as part of this action.

Plaintiff's Amended Complaint was 79 handwritten pages long. Much of the Amended

---

of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

[2] Plaintiff lists the defendants by their last names only, except for William Stickman. The others are Stowitzky, Casner, Lockett, Martin, Coleman and Enders.

Complaint, as has been seen in Plaintiff's other prisoner civil rights cases in this Court, was a diatribe on the general violation of his rights. On September 26, 2005, Plaintiff was ordered to file a new amended complaint that was strictly limited by page number. Plaintiff was ordered to describe his allegations in simple, concise and direct statements. Although Plaintiff's Second Amended Complaint was filed six days late, it totaled only four typed pages from which sixteen claims were gleaned. On February 7, 2006, the Court accepted the Report and Recommendation of this Magistrate Judge, and granted in part and denied in part Defendants' dispositive motion on this Amended Complaint. Six claims remained for trial, three based on alleged violations of Plaintiff's right against cruel and unusual punishment and three based on Plaintiff's right not to be retaliated against for filing lawsuits and grievances against prison personnel.

      Judge Sean McLaughlin held a status conference on February 13, 2006, to set the case for trial. At that conference, Plaintiff complained that he should not be required to travel to Erie for trial because of its inconvenience. He also claimed that he would not be physically able to travel for some time as he had suffered a heart attack in January 2006 and had an unscheduled surgery upcoming. Nonetheless, Plaintiff agreed to consent to the jurisdiction of the Magistrate Judge for trial, as did Defendants.

      Upon learning of Plaintiff's medical concerns, the Court requested documentation from Plaintiff or his physician regarding his status and an approximate date when trial could be scheduled. Plaintiff faxed the Court a certification from the Clara Maass Medical Center in Belleville, New Jersey, that he had been a patient there from January 31, 2006, to February 3, 2006. Discharge papers were attached to the certification. On these papers, Plaintiff's physician noted no travel restrictions, and, in fact, specifically marked that Plaintiff had no physical restrictions upon discharge. See Discharge Papers attached hereto.

      The Court contacted this physician to be certain that Plaintiff was well enough to travel to Erie for trial. The physician requested the opportunity to examine the patient again before responding. The physician's office accommodated the Court by radically changing its own schedule to offer a prompt examination date to Plaintiff, and accommodated Plaintiff by scheduling a convenient date for him. Mr. Murray failed to show up for his appointment. The

3

physician attempted to contact Plaintiff at all of his known phone numbers to no avail.

The Court then sent out its final scheduling order, which set the dates for the filing of the Pretrial Statements (March 9, 2006, for the Defendants; March 6, 2006 for Plaintiff), and the date for trial (March 14, 2006). The scheduling order was sent to Plaintiff by regular mail and certified mail to the last known address provided to the Court by Plaintiff. The former has not been returned. The certified mail was returned undelivered after three attempts. Plaintiff did not file a Pretrial Statement and did not appear for trial. The Court has not heard anything from Plaintiff since the February 13, 2006, telephonic conference.

### B. Failure to Prosecute

The United States Court of Appeals for the Third Circuit has set out a six-factor balancing test to guide a court in determining whether dismissal of a case for failure to prosecute is appropriate. Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984). The district court must consider:

> 1) the extent of the party's personal responsibility;
>
> 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> 3) a history of dilatoriness;
>
> 4) whether the conduct of the party or attorney was willful or in bad faith;
>
> 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
> 6) the meritoriousness of the claim or defense.

Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002), quoting Poulis, at 868. Not all of the six factors need to weigh in favor of dismissal before dismissal is warranted. Hicks v. Feeney, 850 F.2d 152 (3d Cir. 1988).

With respect to Plaintiff's personal responsibility, the first Poulis factor, Plaintiff is proceeding *pro se* and therefore bears all of the responsibility for any failure in the prosecution of his claims. Despite a plethora of second chances afforded to him by this Court, Plaintiff has taken none of the necessary steps to prosecute this case.

4

In considering the prejudice to Defendants, the second Poulis factor, this Court notes that while this case was filed over three years ago, it remains stagnant and is not moving toward its ultimate resolution due to Plaintiff's continued delays. As this case drags on and on, Defendants are prejudiced by the inordinate delay in the prosecution of this case.

The lengthy procedural history of this matter has been a direct result of Plaintiff's late filings, requests for more time, and efforts to put off trial. Plaintiff's continuous dilatoriness establishes the third Poulis factor. Plaintiff has ignored numerous orders and deadlines of this Court despite being given a number of extensions of time in every context. Plaintiff brought this case and it is his burden to prosecute it in a timely manner.

As to the fourth Poulis factor, this Court finds that Plaintiff's dilatory conduct has been willful and in blatant disregard of numerous court orders. This conduct cannot be attributed to mere negligent missteps by a *pro se* litigant.

In considering the fifth Poulis factor, the effectiveness of alternative sanctions against Plaintiff, this Court notes that monetary penalties, such as the assessment of attorney's fees, are not a serious consideration due to Plaintiff's status as an indigent litigant.[3]

The sixth Poulis factor, the meritoriousness of the claim, is difficult to determine as Defendants have never briefed their defenses to the remaining claims, which are (1) allegations that Plaintiff was denied food and needed medications for periods of time, and that he was denied separations from staff members, some of whom later "attacked" him and deprived him of the food, medication and other items; and (2) in addition to the claim that all of his misconducts were in retaliation for his lawsuits against staff, that staff read his legal mail, destroyed his other mail and pictures, removed his religious books, destroyed items that he needed for his lawsuits, and took money out of his account to stop him from filing lawsuits.

It appears from Defendants' Pretrial Statement that their planned defense to these charges are denials of the charges by Defendants on the witness stand. In addition, Defendants plan to present Plaintiff's prison file and misconduct records to demonstrate, among other

---

[3] Plaintiff is proceeding *in forma pauperis* in this case.

things, the legitimacy of the restrictions on Plaintiff while incarcerated due to his misbehavior, as well as meal records and medical visit records to show that Plaintiff received meals or refused them, and that he was not injured as the result of any of his allegations. In contrast, Plaintiff has not provided the Court with any description of exhibits or testimony on his behalf, such that the meritoriousness of his claims cannot be presumed.

### III. CONCLUSION

THEREFORE, this 17th day of March, 2006;

IT IS HEREBY ORDERED that the record of the dismissal of the case for Plaintiff's failure to prosecute be supplemented with this Opinion to support the order of dismissal and the closing of the case on March 14, 2006.

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE
